UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:16-CR-109-TAV-DCP-6 ) |
| AMANDA WELLS, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion for compassionate release [Doc. 266]. Defendant has filed several supplements [Docs. 277, 300, 304] and a letter in support [Doc. 274]. The United States has filed a response in opposition [Doc. 287]. The matter is now ripe for adjudication. For the reasons set forth more fully below, defendant's motion will be **GRANTED**.

**I.    Background**

On January 11, 2017, defendant pleaded guilty to the lesser included offense of conspiracy to distribute five grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B) [Docs. 92, 106]. Defendant received a sentence of 65 months' imprisonment, to be followed by five (5) years of supervised release [Doc. 178].

Defendant was previously housed at FCI Waseca but has recently been placed in a halfway house in Knoxville, Tennessee under the supervision of RRM Nashville.

Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited October 4, 2021). Defendant is thirty-three (33) years old and while she does not assert that she, herself, suffers from any serious medical conditions, her minor child has been diagnosed with and is undergoing treatment for juvenile myelomonocytic leukemia [Docs. 280, 300]. Defendant is scheduled for release on March 17, 2022. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited October 4, 2021).

## II.    Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*.

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three

3

prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, as no policy statement applies to defendant-filed motions for compassionate release, the second requirement plays no role. *Id.*

**III.     Analysis**

    **A.     Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion**

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

The government concedes that the exhaustion requirement has been met in this case [Doc. 287]. Thus, the Court may consider the merits of defendant's request.

    **B.     Whether Extraordinary and Compelling Reasons Justify Relief**

The exhaustion requirement having been satisfied, the Court must next consider whether a sentence reduction is warranted by "extraordinary and compelling reasons." Because defendant moves for compassionate release on her own behalf, the policy statement set forth in section 1B1.13 of the Federal Sentencing Guidelines is "inapplicable," and "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect

4

the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Defendant argues, among other things, that her minor child's diagnosis with juvenile myelomonocytic leukemia ("JMML") [Docs. 280, 300, 304] satisfies the extraordinary and compelling requirement. Defendant's child, whom the Court will refer to as P.W., began receiving treatment for JMML at East Tennessee Children's Hospital ("ETCH") in July 2020 [Doc. 280]. One of P.W.'s doctors describes JMML as "an aggressive and difficult to treat disease" but also stated that the condition "is cured in about 50% of cases" [*Id*.]. The doctor goes on to state that "[P.W.] will receive a lengthy portion of his treatment at ETCH and then will be required to go to TriStar Centennial Medical Center ("TCMC") in Nashville, TN – for approximately 100 days – for stem cell transplantation" [*Id*.]. P.W. completed his treatment at TCMC and continued to receive outpatient treatment [Doc. 277]. P.W.'s cancer eventually went into remission, but the family recently learned that P.W.'s cancer has returned, and he must resume treatment [Docs. 300, 304]. P.W. will need to be "evaluated for new treatment protocol" at TCMC [Doc. 304]. The new treatment will likely require P.W. to remain in Nashville for a month or longer [*Id*.].

P.W. has been in the care of defendant's parents during defendant's imprisonment [Doc. 281]. In a sworn affidavit, Defendant's mother ("Ms. Wells"), states that the demands of caring for P.W. during this trying time have placed a great hardship on the family [Doc. 281]. Ms. Wells's husband ("Mr. Wells") suffers from his own medical concerns (which, for the sake of the family's privacy, the Court need not go into), leaving Ms. Wells in the unenviable position of trying to find time to care for both P.W. and Mr. Wells, while still trying to manage the family business [*Id.*]. With the return of P.W.'s cancer, Mr. and Ms. Wells have both had to forego "major surgeries" of their own to care for P.W. [Doc. 300].

The Sentencing Commission identifies "[t]he death or incapacitation of the caregiver of the defendant's minor child" as an extraordinary and compelling reason to reduce a defendant's sentence. U.S.S.G. § 1B1.13 cmt. 1(C). While no longer binding, courts may "permissively consider [the Sentencing Commission's guidance] as part of [their] discretionary inquiry," *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021). And while this case does not involve the death or incapacitation of P.W.'s current caregiver, it is clear that P.W. now faces the resurgence of an "aggressive and difficult to treat" form of cancer which has only a 50% survival rate [Docs. 280, 304]. Furthermore, Mr. and Ms. Wells both have their own medical concerns which need treatment. Under the totality of the circumstances, the Court finds that the return of P.W.'s "aggressive and difficult to treat" cancer, coupled with the various hardships faced by defendant's parents, coupled with the ongoing COVID-19 pandemic, which will only exacerbate the difficulties

6

P.W. will face as he resumes his cancer treatment,[1] further establish the extraordinary and compelling reasons needed for compassionate release.

In reaching this decision, the Court recognizes the facts of this case do not fall squarely within the Sentencing Commission's death or incapacitation guidelines. However, the Court is also cognizant of the fact that it is no longer bound by Sentencing Commission guidelines, and instead has discretion to make the extraordinary and compelling determination. *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). In this instance, the Court exercises its discretion to find that the specific facts of this case satisfy the extraordinary and compelling requirement.

### C. § 3553(a) factors

At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances

---

[1] The Court notes the increased risk COVID-19 presents to immunocompromised individual, such as a child undergoing cancer treatment. *See* Staying Well During COVID-19 – Cancer Patients and Survivors, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/cancer/survivors/staying-well-during-covid-19.htm.

7

Case 3:16-cr-00109-TAV-DCP   Document 305   Filed 10/04/21   Page 7 of 11   PageID #: 2832

of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491.

The Court begins with the criminal conduct at issue in this case. Defendant pleaded guilty to the lesser included offense of conspiracy to distribute five grams or more of methamphetamine [Doc. 92, ¶ 1]. The plea agreement indicates that between August 30, 2015, and August 25, 2016, defendant and others conspired to distribute methamphetamine at various locations in the Eastern District of Tennessee [*Id*., ¶ 4]. Defendant agrees that she should be held responsible for at least 35 grams, but less than 50 grams, of actual methamphetamine [*Id*.].

The Court finds that this was a serious drug offense. Nor was this defendant's first drug conviction. Defendant's criminal history includes a state court conviction for selling methamphetamine and a conviction for smuggling oxycodone into the Roane County Jail [Doc. 171, ¶¶ 42, 44]. Defendant has also been convicted of possession of drug paraphernalia, joyriding, and other traffic offenses [*Id*., ¶¶ 39-44].

The Court also notes that defendant was recently transferred from FCI Waseca and has been placed in a halfway house in Knoxville, Tennessee under the supervision of RRM Nashville. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited October 4, 2021). The fact that the Bureau of Prisons authorized defendant to be transferred from a traditional prison facility to a halfway house where, by necessity,

8

defendant would be subject to much less restrictive security conditions, speaks to a lessened need to protect the public from future crimes by the defendant, as well as a lack of danger to the public if she were released.

The Court has also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). Further, the Court has considered the kinds of sentences available, the guideline sentencing range, and the need to avoid unwarranted disparities. *Id*.

In addition, as the Court noted above, defendant was sentenced to a term of imprisonment of 65 months [Doc. 178], and she is due to be released March 17, 2022, approximately five months from now. The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this instance, defendant has served the vast majority of her sentence, which the Court finds weighs in favor of compassionate release.

9

The Court is cognizant of the government's arguments regarding defendant's disciplinary infractions while in prison [Doc. 287-2]. While defendant's infractions do cause the Court some concern, those concerns are addressed by the fact that defendant will be required to abide by conditions of supervised release, which include provisions governing drug testing and/or treatment if needed [Doc. 178]. Furthermore, the Court again notes the fact that the Bureau of Prisons elected to transfer defendant to a halfway house. Thus, while defendant may have had some disciplinary issues while serving her sentence, the Bureau of Prisons still deemed it appropriate to transfer her to a less restrictive environment. The Court finds that this fact helps alleviate any concerns defendant's disciplinary record might have created.

Having considered the § 3553(a) factors relevant to this case, as well as the record as a whole, the Court finds that, in total, the factors weigh in favor of granting defendant's request for compassionate release. Specifically, the Court finds that reducing defendant's sentence to one of time served (a reduction of approximately five months) will result in a sentence which is sufficient, but not greater than necessary, to achieve the goals Congress has identified in both sections 3553(a) and 3582(c)(1)(A). The Court finds that a sentence of time served still reflects, among other things, the seriousness of defendant's offense, provides just punishment, and provides adequate deterrence. The Court does not reach this decision lightly, and the Court's decision in no way minimizes the serious nature of drug trafficking offenses in general, or the ongoing problems caused by methamphetamine both in this District and across the country. However, based on the record before it, the Court

determines that compassionate release is warranted in this case, and defendant's motion will be **GRANTED**. In reaching this decision, the Court has considered the parties' filings, the PSR, the § 3553(a) factors and other relevant law, and the record as a whole.

## IV. Conclusion

Accordingly, for the reasons set forth more fully above, defendant's motion [Doc. 266] is hereby **GRANTED**. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) the defendant's sentence of 65 months of imprisonment is reduced to **time served**. The previously ordered terms of supervised release will remain in effect [Doc. 178]. This Order will be **STAYED for up to three (3) days** to allow the Bureau of Prisons time to process the Order. Given that defendant has already been released to a halfway house, it does not appear that a period of quarantine will be required. If additional time will be needed to effectuate the Order, or if a quarantine of the defendant is medically necessary, counsel for the parties should so advise chambers.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE